# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-CT-00075-SCT

*JAMES WALTER PARCHMAN*

*v.*

*AMWOOD PRODUCTS, INC. AND MISSISSIPPI MANUFACTURERS' ASSOCIATION WORKERS' COMPENSATION TRUST*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 12/15/2005 |
| TRIAL JUDGE: | HON. SHARION R. AYCOCK |
| COURT FROM WHICH APPEALED: | MONROE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JIM WAIDE |
| | RON L. WOODRUFF |
| ATTORNEY FOR APPELLEES: | JOHN S. HILL |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| DISPOSITION: | REVERSED AND REMANDED - 06/12/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**GRAVES, JUSTICE, FOR THE COURT:**

¶1. On January 14, 2008, this Court granted James Parchman's petition for writ of certiorari to review the following issues:

> I. Whether the Court of Appeals applied the wrong standard of review and failed to resolve all doubts in favor of compensation in its opinion.

> II. Whether the Court of Appeals misapprehended binding precedent in holding that Parchman had a compensable injury prior to September 2002.

III. Whether the Court of Appeals misinterpreted binding law in holding the two-year statute of limitations was not tolled where Amwood failed to comply with the notice requirement of the act.

IV. Whether the Court of Appeals overlooked the fact that there was not substantial evidence supporting the Commission's split decision and misapprehended facts concerning Parchman's "wage-earning" capacity.

¶2. Although Parchman raised the issue of whether Amwood's continued payment of his salary constituted payment in lieu of workers' compensation benefits on appeal, he failed to reassert this issue in his petition for writ of certiorari to this Court. However, we find the aforementioned issue to be dispositive of the case. Amwood's continued payment of Parchman's salary through September of 2002, even though he was absent from work for more than sixteen weeks as a result of his injury, constituted payment of salary in lieu of workers' compensation benefits. Accordingly, we find that Parchman's petition to controvert was not barred by the statute of limitations. Therefore, we reverse and remand the case for a hearing on the merits.

## FACTS AND PROCEDURAL HISTORY

¶3. James Parchman began working for Amwood Products in 1993, and he was promoted to plant manager for Amwood in March 2000. Parchman's responsibilties as plant manager included overseeing several employees, and he was directly supervised by Jackie Burdine, Amwood's vice-president.

¶4. In March 2000, Parchman was assisting another Amwood employee with a welding job when a piece of hot slag fell into his right boot, leaving two small burns on either side of Parchman's ankle. Because of the size of the burns, Parchman did not consider the injury to be serious and simply put an antibiotic ointment and a bandage on the burns. It was not

2

until several weeks later, when the burns had not healed, that Parchman sought medical treatment for the injury. Under the orders of his doctor, Parchman began weekly treatments for the burns from April 2000 through February 2002. At the commission hearing, Parchman testified that he scheduled his doctor's appointments during his lunch break so that he would not miss work. In February 2002, when the wounds still had not healed, Parchman was admitted to the hospital to undergo tests to determine why the wounds would not heal. At that time, Parchman was hospitalized for three weeks.

¶5. In April and May of 2002, Parchman missed five weeks of work to undergo another treatment for the unhealed burn wounds. After this treatment also failed to heal the wounds, Parchman had skin grafts done on the area in the summer of 2002. Parchman received one skin graft per week for eight weeks. During this process, Parchman was under doctor's orders to remain on bed rest, causing him to be absent from work for nearly three months.

¶6. While Parchman was off from work undergoing skin grafts, Amwood notified him that they would no longer be able to pay his salary. Further, Greer, the president of Amwood, suggested that Parchman apply for temporary disability benefits. Parchman believed that he would be able to return to work at Amwood after the completion of his treatments. However, Greer confirmed with Parchman that he was fired. Greer reported to Parchman that Amwood was reorganizing and that his job as plant manager would no longer exist. Amwood continued to pay Parchman's full salary until his termination.

¶7. On July 23, 2003, Parchman filed his petition to controvert with the Mississippi Workers' Compensation Commission. Asserting that Parchman's claim was barred by the two-year statute of limitations, Amwood filed a motion to dismiss. At the hearing on

3

Amwood's motion to dismiss, Parchman testified that he reported to Burdine, Amwood's vice president, prior to his first doctor's appointment that he was seeking medical treatment for the burns on his foot. Further, he testified that he advised Burdine of each doctor's appointment prior to the appointment. Joey Southard, who was present when Parchman sustained the injury, also testified that he and Burdine had discussed Parchman's injury on several occasions. Furthermore, Parchman discussed his injury on separate occasions with two female employees of Amwood who were responsible for filing workers' compensation claims. One of the women, Ms. Edwards, testified that Parchman had told her that he did not intend to file a claim for workers' compensation, and further had advised her that he did not wish her to file anything with the commission. Parchman denies that he requested Ms. Edwards to refrain from filing anything with the commission.

¶8.     Amwood maintained that it was unaware that Parchman's injury was work-related until more than a year after Parchman sustained the injury. After a hearing on the motion, at which the aforementioned evidence was presented, the administrative law judge granted the motion to dismiss, finding Parchman's claim to be barred by the two-year statute of limitations, as provided in Mississippi Code Annotated Section 71-3-35 (Rev. 2000). Parchman appealed the administrative law judge's decision to the full commission, which affirmed the dismissal in a two-to-one decision on September 9, 2005. Parchman next appealed the commission's decision to the circuit court, which affirmed the dismissal. Parchman then appealed that decision to this Court, which assigned the appeal to the Court of Appeals. The Court of Appeals, without dissent, affirmed the decision of the circuit court on January 30, 2007. *Parchman v. Amwood Prods., Inc.*, 2007 Miss. App. LEXIS 31 (Miss.

4

Ct. App. Jan. 30, 2007). On January 17, 2008, this Court granted Parchman's petition for writ of certiorari. *Parchman v. Amwood Prods., Inc.*, 973 So. 2d 244 (Miss. 2008).

## ANALYSIS

¶9. Unless there exists an agreement "that the wage is a gratuity in addition to workmen's compensation," when a claimant "is paid his usual salary and does no work for a given period or does so little work that he really does not *earn* his wage" the continued payment of the claimant's salary "will be considered as having been in lieu of compensation." Dunn, Mississippi Workmen's Compensation § 45 (3d ed. 1982) (emphasis added). "When an employer elects to continue the payment of the wages of an injured employee and the payment is not in return for work done or services rendered but is either expressly or impliedly in lieu of compensation, the payments may be considered as payments of compensation to the same extent and *with like effect as payments otherwise made by an insurance carrier under and in compliance with the Act*. Dunn, Mississippi Workmen's Compensation § 318.1 (3d ed. 1982) (emphasis added); *see also* ***Brown v. F.W. Woolworth Co.***, 348 So. 2d 236 (1977). Furthermore,

> if the payment of wages was intended to be in lieu of compensation, credit for the wages is allowed. However, since there is seldom any evidence on whether such an intention lay behind the payment, it must be inferred from the circumstances surrounding the payment.

***George S. Taylor Constr. Co. v. Harlow***, 269 So. 2d 337, 338 (Miss. 1972). Moreover, "if [the employee] is paid his regular wage, although he does no work at all, it is a reasonable inference that the allowance is in lieu of compensation." ***Id.***

5

¶10.   The administrative law judge found that, even in light of the fact that Parchman

missed time from work beginning shortly after he sustained the injury, that he "continued to

perform the essential functions associated with his position," such that Amwood's continued

payment of Parchman's salary did not constitute payment of his salary in lieu of workers'

compensation benefits.  The commission agreed and dismissed the issue as without merit

without pointing to any facts to support its finding:

> The Administrative Judge determined that claimant's receipt of salary through
> the fall of 2002 did not constitute "payment of salary in lieu of compensation"
> but rather reflected payment of salary for work performed.  We agree.  The
> claimant continued to work for the employer until September 2002 and was
> paid for the services he rendered.  The argument that wages or salary claimant
> received were in lieu of compensation is spurious.

¶11.   The Court of Appeals, applying the "substantial evidence" standard to review this

issue of fact, found that the commission's decision was supported by "substantial evidence"

and therefore found the issue to be without merit.  In support of its decision, the Court of

Appeals referenced the following:

> Parchman testified in his deposition that during the periods that he was on
> leave for treatment, he continued to communicate with the plant and do his job
> to the best of his ability.  Lanny Wilkerson, the office manager, also testified
> that Parchman was in regular contact with his employees while he was out for
> treatment.  There was no evidence at all that Parchman was using paid sick
> leave or vacation days during his extended absences as the basis for his
> receiving his salary, as neither side raised the question.  Accordingly, this
> Court holds that the agency's finding is supported by substantial evidence, and
> Parchman's arguments that his wages were paid in lieu of workers'
> compensation benefits must fail.

*Parchman v. Amwood Prods, Inc.*, 2007 Miss. Ct. App. LEXIS 31, *11-12, ¶ 18 (Miss. Ct.

App. Jan. 30, 2007).

6

¶12.    We disagree.  The record reflects that Amwood continued to pay Parchman's full salary although he missed three weeks of work in February 2002, another five weeks of work in April-May 2002, and nearly three months in the summer of 2002.  This is clear evidence that Parchman did not continue to "earn" his full wages.  It is an erroneous conclusion that Parchman was still performing the essential functions of his job and therefore continued to "earn" his full salary when he was absent from work for three weeks in February, five weeks in April-May 2002, and for the period of time that he missed in the summer of 2002 before his termination.  The following excerpt is from Parchman's deposition regarding his job duties and responsibilities:

> **Q**. Any change in job responsibilities [after you assumed the position as plant manager]?
>
> **A**. No.
>
> **Q**. What were your essential job responsibilities as assistant plant manager?
>
> **A**.  Basically to make sure the product moved from one end of the building, out the back; make sure deliveries were on time; that we had the things to work with; maintenance; upkeep; pretty well the whole nine yards.  It (sic) was kind of a jack of all trades.
>
> . . . .
>
> **Q**.  Did you have, for want of a better term, supervisors, foreman, lead men, something like that that (sic) reported directly to you?
>
> **A**.  We did.
>
> **Q**.  How many people would have reported directly to you generally?
>
> **A**.  We probably had four lead people at all times, but I would say four.
>
> . . . .

**Q**. So you were the person with principal responsibility or day-to-day in the plant?

**A**. Correct.

¶13.    Again, we find incredible the notion that Parchman continued to perform the job duties and responsibilities that he described in his deposition testimony and therefore, continued to "earn" his wages while he was absent from work for more than sixteen weeks. Even the dissenting opinion acknowledges that " . . . Greer told Parchman that Amwood could no longer afford to pay his salary while he was not working and suggested that Parchman apply for temporary social security disability benefits." Therefore, we find that Amwood's continued payment of Parchman's salary until September of 2002 constituted payments made in lieu of workers' compensation benefits, and that these payments, in the place of workers' compensation benefits, tolled the two-year statute of limitations. Accordingly, Parchman's petition to controvert, filed in July 2003, was not barred by the statute of limitations. Furthermore, because we find this issue to be dispositive, the remaining issues raised by Parchman need not be addressed. We reverse the decision of the Court of Appeals and remand this case for a hearing on the merits.

**CONCLUSION**

¶14.    We find that Amwood's continued payment of Parchman's salary, despite the fact that he was absent from work seeking medical treatment for more than sixteen weeks, constituted a payment of salary in lieu of workers' compensation benefits. Accordingly, we find that Parchman's petition to controvert, filed in July 2003, was not barred by the statute of limitations. Therefore, we reverse and remand the case for a hearing on the merits.

8

¶15. **REVERSED AND REMANDED**.

**WALLER AND DIAZ, P.JJ., DICKINSON, RANDOLPH AND LAMAR, JJ. CONCUR. EASLEY, J. DISSENTS WITHOUT SEPARATE WRITTEN OPINION. CARLSON, J. DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SMITH, C.J..**

**CARLSON, JUSTICE, DISSENTING:**

¶16. Because I disagree with the majority that the employer's salary payments to an employee during certain periods when the employee missed work due to inpatient and outpatient medical treatment for an on-the-job injury constituted payments of his salary in lieu of workers' compensation payments, thus tolling the applicable two-year statute of limitations, I respectfully dissent.

¶17. On July 23, 2003, James Walter Parchman filed a Petition to Controvert with the Mississippi Workers' Compensation Commission concerning an injury he sustained while working at Amwood Products, Inc. On August 15, 2003, Amwood filed its Answer. On August 25, 2003, Amwood filed its Response to Requests for Admission. On May 7, 2004, Amwood filed an Amended Answer to Petition to Controvert. On June 7, 2004, Parchman filed a Pretrial Statement of Claimant. On June 14, 2004, Amwood filed a Motion to Dismiss. On July 8, 2004, Parchman filed a Response to Amwood's Motion to Dismiss, along with deposition transcripts as exhibits.

¶18. Parchman testified in his first deposition that he began working at Amwood as an assistant plant manager and had always been a salaried employee. Parchman had the principal responsibilities of day-to-day operations in the plant. In the late 1980s, Parchman was diagnosed with lupus, and he had check-ups for the condition every six months.

9

Parchman also testified that in late March 2000, he was assisting fellow employee Joey Southard[1] with a welding task when a piece of hot metal rolled into his boot and burned his right ankle. He put a band-aid and Neosporin on his ankle and continued normal work activity. In two to three weeks, the burn was bigger rather than healed. Parchman testified that he told Jackie Burdine about the accident and made an appointment with Dr. McAuley in Tupelo. Parchman filed his claims on his wife's health insurance and missed no time from work other than for doctor's appointments. Parchman's treatment was not working, so he visited the wound center at North Mississippi Medical Center, beginning in June 2000, for treatments once or twice a week until February 2002, normally at lunchtime, to minimize time missed from work. Parchman's doctors suspected that the wound's failure to heal was related to his lupus; however, tests conducted did not show that lupus was the cause.

¶19. In February 2002, Parchman was hospitalized for five days, which was the first time he had missed work other than for doctor's appointments. Parchman left the hospital and then was again hospitalized for approximately three weeks. Parchman returned to work for about six weeks. Beginning approximately in April 2002, Parchman received treatments for five weeks and was unable to work. Parchman continued to draw his regular salary. He again returned to work, and sometime in July 2002, Parchman's doctor suggested that he receive skin graft treatments for eight weeks. Parchman told Burdine that he would be unable to work during the treatment, and Burdine did not say anything positive or negative about the situation. Parchman then began the skin graft treatments around the first of August 2002 and missed eight weeks of work.

---

[1]The record is replete with misspellings. The correct spelling is Southard.

¶20. Around the third or fourth week, Thomas Greer, president of Amwood, called Parchman and asked him to come by the plant. Parchman testified that Greer told Parchman that Amwood could no longer afford to pay his salary while he was not working and suggested that Parchman apply for temporary social security disability benefits. During the seventh week, Greer again asked Parchman to come by the plant, where he told Parchman that Amwood was restructuring and that his job was being eliminated. According to Parchman, after leaving the meeting, he called Greer and asked him if he was being terminated due to his inability to work, and Greer responded that Parchman had never reported the incident. Parchman responded that Greer knew of the incident, and Greer again stated that Parchman had not reported it. Parchman then worked at other jobs when he was physically able to work. At the time of the deposition, Parchman was not working; he was continuing medical treatment but had no disability benefits. All of Parchman's medical expenses were filed on his wife's insurance plan. Parchman filed a separate lawsuit against Amwood, alleging violations of the Americans with Disabilities Act and the Family Medical Leave Act.

¶21. Greer testified in his deposition that Parchman was a good employee and that he had never been written up or verbally reprimanded. Parchman was promoted to plant manager on April 1, 2001, but did not receive a pay raise. Greer testified that he never told Parchman that he could not pay him while he was off work and that he offered to assist Parchman in applying for disability benefits after, not before, he was terminated. Greer testified that he stated that he could not continue to pay Parchman because Amwood could not continue his position. Parchman was paid his salary through September 2002. According to Greer,

11

Parchman never told him that he had suffered a work-related injury and that the first he had heard of it was during Parchman's own deposition testimony, which Greer apparently attended. Greer testified that Parchman told him that his boot had rubbed a blister on his ankle sometime in 2000 or 2001. Greer thought Parchman's lupus was the cause, and he was told after he terminated Parchman that the injury was work-related. Greer also testified that "Mr. Parchman was a supervisor. He was plant manager. He did not punch a clock. He was hired to do a job. And as long as he was doing his job, if he had to take off, that was his business. I didn't tell him when he had–couldn't take off and go to a doctor's appointment. I only looked at the job he did."

¶22. Burdine testified in his deposition that he learned the injury happened at work about a year after the injury and that he had believed the problem to be related to Parchman's lupus. Burdine did not report the injury when he learned it was work-related because "[Parchman] was the plant manager and it was his duty. He knew who to go to." Burdine further testified that Parchman should have reported the injury to Donna Edwards, the secretary. After Burdine learned that Parchman's injury was work-related, he discussed the situation with Lannie Mae Wilkerson, secretary and treasurer of Amwood, and both were bewildered as to why Parchman would not report the situation and have Amwood take care of it. Burdine testified that employees were to report all injuries which occurred on the job, no matter how minor, to Edwards.

¶23. Southard testified in his deposition that he continued to work for about five or six months at Amwood following Parchman's injury. Approximately half a dozen times, Southard asked Burdine where Parchman was, and Burdine replied that Parchman had gone

12

to the doctor to take care of the burn on his leg. Southard stated that he explained to Burdine how Parchman's injury occurred "probably that day" that it happened. Southard also testified that if he had a work-related injury, he would have reported it to Parchman or Burdine.

¶24. Parchman testified in his second deposition that he did not know who made the decision whether or not to file or not to file a workers' compensation claim, but that if someone reported an injury to him, he directed that person to Wilkerson and Edwards. Parchman also testified that at the time of injury, he did not think it was serious and did not talk to anyone about it. Parchman told Burdine what had happened two to three weeks after the incident, when he needed to leave for his first doctor's appointment. He said he showed Burdine the new medical boot he had to wear when he returned to work. Parchman testified that he paid for the doctor's visits by filing them on his wife's insurance because he thought his injury would heal quickly. Parchman also stated that it didn't occur to him that he might need to file a workers' compensation claim even after the initial doctor's visit, or even when he began treatments at the wound center.

¶25. According to Parchman, at and from the time of the injury, he discussed with Edwards what his doctors were doing, and that Edwards never asked if he wanted to file a workers' compensation claim or how he was paying his medical bills. Parchman also testified that he never saw the doctor that he believed Amwood preferred for its employees to see for work-related injuries. Parchman further testified that he took no time off from work, except for doctors' appointments, until February 2002, and was paid his full salary because he "was working full-time." Parchman stated that he performed his job as plant manager until his

13

two-to-three-week leave following his five-day hospital stay in February 2002, and then worked again for two to three weeks.

¶26.   Following his February 2002 hospital stay, Parchman said he regularly talked to Burdine and other employees on the telephone to assist them and further testified that "there was a good bit of communication." Sometime in May or June 2002, Parchman's doctors told him to limit his work but did not advise him to not go back to work; he discussed this with Burdine and Wilkerson. Parchman testified that he did not have any discussions with Greer concerning his injury before he was terminated. Parchman also testified that he communicated with the people at Amwood concerning plant operations throughout the time he received skin grafts and also assisted another employee by repairing a bander at the plant one day. Parchman worked at two other businesses after he was terminated from Amwood, but his doctor told him to stop working on October 10, 2003, after being hospitalized. Parchman testified that his doctors told him that lupus may have affected his ability to heal but that they could not be certain.

¶27.   Dr. Charles King, the rheumatolgist who treated Parchman's lupus, testified in his deposition that it was possible that the failure of the burn to heal was caused by Parchman's lupus but that there was no way to know that with certainty. Parchman told Dr. King that the injury was work-related when he saw Dr. King in June 2000, and Dr. King referred him to the wound center for treatment. Dr. King testified that he considered Parchman to be totally disabled for the purposes of work on June 29, 2000, which was the date of Parchman's first visit with him after he had been burned.

14

¶28. Wilkerson testified in her deposition that she learned that Parchman was having trouble with his foot in spring or early summer of 2000, but she thought it was a blister and not work-related. Wilkerson's niece is Parchman's wife, Jolayne. In the summer of 2002, Wilkerson asked Jolayne's mother how Parchman was doing and was informed that Parchman had been injured at Amwood. Wilkerson told Jolayne's mother that she believed the time limit had expired for filing a workers' compensation claim. Wilkerson testified that she wrote up all accidents that were reported to her, and Edwards was to do so also, although Amwood did not send in reports to the commission for minor injuries. Wilkerson discussed Parchman's injury with Greer and Burdine when she discovered it was work- related; and both Greer and Burdine told her that it had never been reported to them. Wilkerson further testified that Edwards never told her that Parchman had been injured on the job while Parchman was employed at Amwood.

¶29. In January 2003, Edwards stopped working at Amwood, and at that time told Wilkerson "that [Parchman] had told her two or three weeks after the accident that he had gotten burned at work but that he told her not to report it, that he would take care of it, and she had never reported it."

¶30. On July 6, 2004, Parchman completed an affidavit, wherein he stated:

> After my ankle was burned while working at Amwood in approximately March 2000, I originally did not believe it was a serious injury. However, after a couple of weeks, and it did not heal, but instead it got worse, I went to see the doctor.
>
> Around this time, I discussed my doctor visits with Jackie Burdine, Donn[a] Edwards, Randy Wellford, and some of the other employees at Amwood.

15

A couple of months after the injury, I was talking with Donna Edwards and she asked me how I was paying for the doctor bills. I told Donna that I was on my wife's insurance. Donna asked whether that was getting expensive, and I told her that I did not care how much it cost, I was just worried about my leg and getting healthy.

I never told Donna Edwards not to report my injury to workers's [sic] comp. I never told Donna Edwards that I would take care of it.

I had little involvement with workers' comp, that was handled by Donna Edwards and Lannie Wilkerson. It was not my responsibility to fill out the forms or file the forms. I did not know that they never wrote-up my injury, or filed a report with the workers' comp commission. I assumed that they handled my injury, in regards to workers comp, the same way they handled any other work related injury at Amwood.

¶31. On August 13, 2004, Parchman filed a Motion to Supplement his Response to Amwood's Motion to Dismiss, containing an affidavit from Donna Edwards and a copy of Amwood's first Report of Injury, which was filed with the commission on July 28, 2003. Donna Edwards's affidavit stated:

I remember arriving at work one morning and Mrs. Wilkerson and Mr. Parchman were leaving my office talking. Mrs. Wilkerson made a reference to Mr. Parchman's foot as he was leaving. After he left, I asked Mrs. Wilkerson what was wrong with his foot and she informed me that he had burnt it the previous afternoon welding at work. I asked had she filled out the paperwork as she usually did if I wasn't working when an accident occurred, she said that she didn't think he was going to file it.

Several days later Mr. Parchman and I were in the office at Amwood, I asked was he not going to file Workman's Comp and he said that he just wanted his foot to get well.

Many times during the duration of Mr. Parchman's injury I discussed it with Mr. Burdine and Mrs. Wilkerson. They always inquired as to how he was that day. Mr. Burdine would tell me that he had checked on him if he wasn't at work or we would call from work. Mrs. Wilkerson did the same and would tell of visiting him. Both knew that the accident had happened at work, as did the other employees.

16

¶32.   On September 9, 2004, a hearing was conducted before Administrative Law Judge Cindy P. Wilson.   On December 16, 2004, Judge Wilson entered an order granting Amwood's Motion to Dismiss and dismissing Parchman's Petition to Controvert with prejudice.  On December 30, 2004, Parchman filed a Petition for Review of Judge Wilson's Order with the commission.   On June 6, 2005, the full commission held a hearing on the Petition for Review.   On September 9, 2005, the commission entered an order affirming Judge Wilson's order.  However, the decision was 2-1, drawing a dissent.

¶33.   On September 19, 2005, Parchman filed a Notice of Appeal to the Circuit Court of Monroe County, along with his appellant's brief.  On December 19, 2005, the Circuit Court of Monroe County, Judge Sharion Aycock presiding, entered an order affirming the commission's decision.  On January 12, 2006, Parchman filed his Notice of Appeal to this Court in the Monroe County Circuit Court.

¶34.   We assigned this case to the Court of Appeals, which affirmed the commission's decision on January 30, 2007, 8-0, with two judges not participating. ***Parchman v. Amwood Prods.,*** 2007 Miss. App. LEXIS 31 (Miss. Ct. App. Jan 30, 2007).  Parchman's motion for rehearing was thereafter denied by the Court of Appeals. ***Parchman v. Amwood Prod., Inc.***, 2007 Miss. App. LEXIS 742 (Miss. Ct. App. Nov. 6, 2007).  On January 17, 2008, we granted certiorari. ***Parchman v. Amwood Prod.***, 973 So. 2d 244 (Miss. 2008). The majority, finding one issue dispositive, addresses only that issue; however, I will address each issue Parchman presents.

## I. WHETHER THE COURT OF APPEALS APPLIED THE INCORRECT STANDARD OF REVIEW.

¶35. The Court of Appeals stated:

In reviewing the decision of a chancery or circuit court regarding an agency action, this Court applies the same standard employed by the lower court. *Mississippi Sierra Club v. Mississippi Dep't of Envtl. Quality*, 819 So. 2d 515, 519 (P15) (Miss. 2002). This Court will not disturb an agency's ruling unless the decision of the administrative agency "(1) was unsupported by substantial evidence; (2) was arbitrary or capricious; (3) was beyond the power of the administrative agency to make; or (4) violated some statutory or constitutional right of the complaining party." *Id.*

*Parchman v. Amwood Prods., Inc.*, 2007 Miss. App. LEXIS 31, *5, ¶10 (Miss. Ct. App. Jan. 30, 2007). Parchman argues that whether the statute of limitations had expired presents a question of law, and is thus reviewed *de novo*, directing us to *Jordan v. Pace Head Start*, 852 So. 2d 28, 30 (Miss. App. 2002). Furthermore, Parchman argues that remedial statutes are to be construed liberally in favor of the injured, directing us to *Holbrook by & Through Holbrook v. Albright Mobile Homes, Inc.*, 703 So. 2d 842, 844 (Miss. 1997).

¶36. Assuming *arguendo* that Parchman is correct in his assertion that the Court of Appeals should have utilized a *de novo* standard of review, it is my opinion that Parchman still has failed to inform us as to how the different standard of review would have altered the decision. "Assertions of error without prejudice do not trigger reversal." *Rollins v. State*, 970 So. 2d 716, 722 (Miss. 2007) (quoting *Jones v. State*, 912 So. 2d 973, 977 (Miss. 2005); *see also Nicholson ex rel. Gollott v. State*, 672 So. 2d 744, 751 (Miss. 1996)). I find this issue to be without merit; however, I discuss the standard of review in more detail *infra*.

## II. WHETHER THE STATUTE OF LIMITATIONS WAS TOLLED FOR FAILURE TO COMPLY WITH THE NOTICE REQUIREMENT OF THE ACT.

¶37.    Parchman argues that Amwood failed to give the statutorily required notice to the commission, and thus the statute of limitations is tolled.  Parchman directs this Court to *Holbrook by & Through Holbrook v. Albright Mobile Homes, Inc.*, 703 So. 2d 842 (Miss. 1997) (employer estopped from relying on two-year statute of limitations defense where employer failed to give notice and employer misrepresented existence of insurance coverage for deceased employee) and *Martin v. L. & A. Contracting Co.*, 249 Miss. 441, 162 So. 2d 870 (1964) (employer estopped from relying on two-year statute of limitations where employer failed to comply with notice requirement and employer arranged coverage from Florida instead of Mississippi because Florida benefits were less).

¶38.    Parchman incorrectly relies on *Holbrook* and *Martin*, as the crux of those decisions was other misconduct by the employer besides failure to give notice, that being misrepresentation and providing less generous benefits from another state. Parchman further argues that, according to our decision in *Holbrook*, *either* failure of the employer to give notice *or* misconduct tolls the statute of limitations. I disagree. Mississippi Code Annotated Section 71-3-67(1) (Rev. 2000) states:

> Within ten (10) days after the *fatal termination* of any injury, the employer, if self-insured, or its carrier, shall file a report thereof with the commission on a form approved by the commission for this purpose.
>
> In the event of an *injury which shall cause loss of time in excess of the waiting period* prescribed in Section 71-3-11[2], a report thereof shall be filed with the commission by the employer or carrier, on a form approved by the commission for this purpose, within ten (10) days after the prescribed waiting period has been satisfied.

---

[2]The prescribed period is five days.

19

> Within ten (10) days after the employer or carrier knows, or reasonably should know, that an *injury has resulted, or likely will result, in permanent disability or serious head or facial disfigurement*, but which does not cause a loss of time in excess of the prescribed waiting period, a report thereof shall be filed with the commission on a form approved by the commission for this purpose.

(Emphasis added). First, Parchman's injury was not fatal. Second, Parchman's injury, which occurred in March 2000, did not require any absence from work for more than five days at the time of the injury. Thus, Amwood was not required to give the commission notice. Finally, Amwood never knew that Parchman's injury did cause or would likely cause permanent disability and was therefore not required to give notice. I find that this statute is not applicable to the case *sub judice*.

¶39.    On the other hand, Mississippi Code Annotated Section 71-3-35(1) (Rev. 2000)[3] states:

> No claim for compensation shall be maintained unless, within thirty (30) days after the occurrence of the injury, actual notice was received by the employer or by an officer, manager, or designated representative of an employer. If no representative has been designated by posters placed in one or more conspicuous places, then notice received by any superior shall be sufficient. Absence of notice shall not bar recovery if it is found that the employer had knowledge of the injury and was not prejudiced by the employee's failure to give notice. Regardless of whether notice was received, if no payment of compensation (other than medical treatment or burial expense) is made and no application for benefits filed with the commission within two years from the date of the injury or death, the right to compensation therefor shall be barred.

I find that, pursuant to the applicable statutes, Amwood was not required to give notice to the commission. I also find that, regardless of whether Amwood had actual notice of Parchman's

---

[3]The applicability of this statute was discussed by the Court of Appeals. *Parchman v. Amwood Prods., Inc.*, 2007 Miss. App. LEXIS 31, **7-9, ¶¶ 12-14 (Miss. Ct. App. Jan. 30, 2007).

injury, the statute of limitations began to run at the time of the injury, and thus ran in March 2002. This issue is without merit.

### III. WHETHER SUBSTANTIAL EVIDENCE EXISTED TO SUPPORT THE COMMISSION'S DECISION.

¶40. Parchman argues that "the evidence is overwhelming that Amwood had 'actual notice' of the injury" and that the Court of Appeals ignored this evidence. Having just set out *in toto* section 71-3-35(1), I repeat here only a portion of the statute relevant to my discussion of this issue.

> *Regardless of whether notice was received, if no payment of compensation (other than medical treatment or burial expense) is made and no application for benefits filed with the commission within two years from the date of the injury or death, the right to compensation therefor shall be barred.*

(Emphasis added). I find that, regardless of whether Amwood had actual notice of Parchman's injury, the statute of limitations began to run at the time of the injury, and thus ran in March 2002, because Amwood made no compensation to Parchman and Parchman did not file a claim until July 23, 2003. This issue is without merit.

¶41. I respectfully disagree with the majority in its analysis. It is clear from the facts discussed *supra* that Parchman was in fact doing the essential functions of his job at least until February 2002 because he was absent only for doctor's appointments, which he scheduled mostly during lunchtimes. Parchman was a salaried employee and was free to schedule his appointments as he wished. From February 2002 until Parchman was terminated, he worked full-time when he was able and communicated his managerial decisions by telephone while away. Parchman even went to Amwood one day during treatments when he was needed to fix a problem. Greer testified that he paid Parchman to

21

do his job and was concerned only that the work got done. It is clear from the record that Amwood was paying Parchman for the job that he was doing and did not pay him in lieu of benefits. Accordingly, pursuant to the statute, it is irrelevant whether Amwood had actual notice of Parchman's work-related injury because Parchman received no compensation and did not file his claim within two years.

### IV. WHETHER PARCHMAN HAD A COMPENSABLE INJURY PRIOR TO HIS TERMINATION.

¶42.   Finally, Parchman argues that "[i]t is undisputed that James Parchman did not have a compensable injury until September 2002, when he was terminated because he had no loss of wage earning capacity." Parchman further argues that the statute of limitations does not begin to run at the time of the injury, but rather when an employee becomes disabled. I disagree. Again, section 71-3-35(1) states that if "no application for benefits [is] filed with the commission within two years from the date of the injury or death, the right to compensation therefor shall be barred." Thus, from the clear language of the statute, the date of the injury is determining. This issue is without merit.

¶43.   In sum, I have already mentioned *supra*, that our standard of review concerning the application of a limitations statute is *de novo* since this issue no doubt involves a question of law; however, in order to answer this question in today's case, we must consider the totality of the record and apply the facts of this case to the applicable law. One cannot but conclude, upon the reading of the majority opinion and this dissenting opinion, that any decision in today's case is understandably fact-driven. Thus, in my opinion, we have before us today a mixed question of law and fact, and while we must review the interpretation of

22

law *de novo*, we review the factual findings of the lower court or agency for clear error. ***Franklin Collection Service, Inc. v. Kyle***, 955 So. 2d 284, 287 (Miss. 2007) (citing ***Hewes v. Langston***, 853 So. 2d 1237, 1241 (Miss. 2003)). As we noted in ***Mississippi Sierra Club v. Department of Environmental Quality***, 819 So. 2d 515, 519 (Miss. 2002), "[w]hen this Court reviews a decision by a chancery or circuit court concerning an agency action, it applies the same standard of review that the lower courts are bound to follow." (Citing ***Miss. Comm'n on Envtl. Quality v. Chickasaw County Bd. of Supervisors***, 621 So. 2d 1211, 1216 (Miss. 1993)). In other words, on appeal, this Court must consider "whether the order of the administrative agency 1) was unsupported by substantial evidence, 2) was arbitrary or capricious, 3) was beyond the power of the administrative agency to make, or 4) violated some statutory or constitutional right of the complaining party." ***Miss. Sierra Club***, 819 So. 2d at 519 (citing ***Miss. Comm'n on Envtl. Quality***, 621 So. 2d at 1215). *See also* ***Sierra Club v. Miss. Comm'n on Envtl. Quality***, 943 So. 2d 673, 677-78 (Miss. 2006) (citing ***McDermott v. Miss. Real Estate Comm'n***, 748 So. 2d 114, 118 (Miss. 1999)).

¶44.    With this being said, I respectfully submit that the majority has improperly re-weighed the evidence in reaching today's decision. In the administrative arena, on disputed evidence, both the administrative law judge and the full commission found that the statute of limitations had expired. In the judicial arena, both the Monroe County Circuit Court and the Court of Appeals affirmed the full commission. I submit that there was substantial evidence to support the full commission's decision, and we should affirm the Court of Appeals on this issue and all issues raised by James Walter Parchman.

23

¶45.    Because the majority holds otherwise, and for the reasons I have stated, I respectfully

dissent.

**SMITH, C.J., JOINS THIS OPINION.**