GRIFFIS, J.,
 

 for the Court:
 

 ¶ 1. Lindsay Logging, Inc., the employer, and the Mississippi Loggers Self-Insured Fund, Inc., the carrier, (collectively “Lindsay Logging”) appeal the circuit court’s decision affirming the Mississippi Workers’ Compensation Commission’s (“Commission”) award of disability benefits to James Terry Watson. Lindsay Logging contends that: (1) Watson’s claim for benefits is barred by the two-year statute of limitations, and (2) Watson’s back
 
 *390
 
 injury was a temporary aggravation of a preexisting condition. We find that Watson’s claim is barred by the two-year statute of limitations; therefore, the judgment of the circuit court is reversed and rendered.
 

 FACTS
 

 ¶ 2. On March 28, 2001, Watson injured his back while operating a tree cutter as part of his employment with Lindsay Logging. He hit a bump while driving the cutter and felt pain in his back and down both legs. Watson reported the injury to his supervisor, Bubba Steen, but Watson was able to finish his shift. He did not see a doctor for the injury until two weeks later. Steen reported Watson’s injury to Clanton Lindsay (“Lindsay”), owner of Lindsay Logging. Lindsay completed a first report of injury on May 9, 2001, noting that Watson notified the employer on March 23, 2001.
 

 ¶ 3. Watson’s work history is extensive. Following his service in the military, Watson worked as a mechanic for a few years. Then, he was hired to run a skidder and do mechanic work for David Breazeale, Jr. Logging Company. He worked there for about ten years and then worked as an iron worker and welder. In 1995, Watson was hired by Lindsay Logging to operate a tree cutter. The tree cutter is similar to a front-end loader that cuts and holds trees. Watson’s duties included running and maintaining the tree cutter.
 

 ¶ 4. Watson continued to work for Lindsay Logging for approximately two months after his injury. Watson testified that he quit on May 25, 2001, because of his back pain; however, Lindsay testified that he had to let Watson go because of job-performance issues. Thereafter, Watson took a job as a foreman for Jerry Vowell Logging. As foreman, Watson was able to sit in a truck instead of operating a tree cutter. He remained at Jerry Vowell Logging for approximately one year and then went back to work for Lindsay Logging. Two months later, Lindsay sold his logging equipment to H & C Logging, Inc.; however, Lindsay continued to oversee operations of the business. Watson continued to work for H & C Logging for six months. He quit because he found it confusing to work for two bosses — both H & C Logging and Lindsay.
 

 ¶ 5. Watson then returned to work for David Breazeale, Jr. Logging. He worked for a couple of months before he saw his family physician, Dr. Richard Carter, because of his back problems. He was referred to Dr. Mitchell Myers, a neurologist, who then referred Watson to Dr. Adam Lewis, a neurosurgeon. Dr. Lewis took Watson off the job on April 22, 2003. At that point, the Mississippi Loggers Self-Insured Fund began to pay workers’ compensation disability benefits to Watson. He received those benefits until October 2004 when he ended his treatment with Dr. Lewis.
 

 ¶ 6. In 2003, while he was receiving benefits, Watson took a job running a tree cutter for Lindsay in Arkansas. Although Watson testified that he was not paid for this work, Lindsay testified that he paid Watson in cash because they both knew he was not supposed to work while he was receiving workers’ compensation benefits. On October 7, 2003, while working in Arkansas, Watson was injured when a pin from the tree cutter hit him in the face and broke his jaw. Again, because Watson was not supposed to be working, Lindsay advised him to file a claim on Lindsay’s general liability insurance.
 

 ¶ 7. In August 2004, Watson was sent to Dr. Howard Katz for an employer’s medical evaluation. Dr. Katz advised
 
 Watson
 
 that he could return to work. Watson went back to work for Lindsay, whose
 
 *391
 
 company was now named Quality Hardwood, Inc. Watson worked for one year until his back pain worsened. In December 2005, Watson returned to Dr. Carter who determined that Watson was totally disabled.
 

 ¶ 8. Watson has not worked since that time. He receives medical treatment at the Veterans Administration and receives $1,476 a month in social security disability benefits. Watson testified that he cannot return to his job as a tree cutter because his leg gives out regularly.
 

 ¶ 9. Watson has had previous back problems. In 1992, he suffered an injury to his back and had a spinal back fusion performed by a neurosurgeon, Dr. W. Lynn Stringer. Dr. Stringer released Watson for work in February 1993, and Watson was able to work without significant limitation until his March 23, 2001, injury at issue in this case.
 

 ¶ 10. Watson filed his petition to controvert on February 3, 2006 — nearly five years after his injury occurred. The administrative law judge (“ALJ”) found that Watson’s claim was not barred by the two-year statute of limitations, nor was it the temporary aggravation of a preexisting condition. Watson was awarded temporary total disability benefits from April 22, 2003, through August 23, 2004, with credit given to Lindsay Logging for wages Watson earned during this time. Watson also received permanent partial disability benefits from the time he finished his last job in September 2004 for a period not to exceed 450 weeks.
 

 ¶ 11. The Commission found that, on the days Watson was absent from work for medical treatment of his injury, Watson was paid his full wages in lieu of compensation benefits; thus, the two-year statute of limitations was erased just as if statutory workers’ compensation benefits had been paid. The ALJ’s decision awarding benefits to Watson was affirmed. Lindsay Logging filed a motion to reconsider, and the Commission reaffirmed its prior holding. The Commission’s judgment was affirmed by the circuit court. Lindsay Logging now appeals.
 

 STANDARD OF REVIEW
 

 ¶ 12. This Court’s scope of review in workers’ compensation cases is limited to a determination of whether the decision of the Commission is supported by substantial evidence.
 
 Westmoreland v. Landmark Furniture, Inc.,
 
 752 So.2d 444, 447 (¶7) (Miss.Ct.App.1999). The Commission sits as the ultimate finder of fact; its findings are “subject to normal, deferential standards upon review.”
 
 Natchez Equip. Co. v. Gibbs,
 
 623 So.2d 270, 273 (Miss.1993). We will only reverse the Commission’s ruling when its findings of fact are unsupported by substantial evidence or the decision was arbitrary and capricious.
 
 Hale v. Ruleville Health Care Ctr.,
 
 687 So.2d 1221, 1224-25 (Miss.1997). “Matters of law are reviewed under the de novo standard of review.”
 
 Westmoreland,
 
 752 So.2d at 448 (¶ 8).
 

 ANALYSIS
 

 Whether Watson’s claim for workers’ compensation disability benefits is barred by the two-year statute of limitations codified at Mississippi Code Annotated section 71-3-35(1) (Rev.2000).
 

 ¶ 13. Lindsay Logging argues that Watson’s claim is time-barred because Watson failed to file his petition to controvert within two years of the date of his injury. Additionally, Lindsay Logging claims that Watson did not receive any workers’ compensation benefits except
 
 *392
 
 medical benefits until May 14, 2003 — more than two years after the date of his injury.
 

 ¶ 14. Section 71-3-35(1) states the following:
 

 No claim for compensation shall be maintained unless, within thirty (30) days after the occurrence of the injury, actual notice was received by the employer or by an officer, manager, or designated representative of an employer. If no representative has been designated by posters placed in one or more conspicuous places, then notice received by any superior shall be sufficient. Absence of notice shall not bar recovery if it is found that the employer had knowledge of the injury and was not prejudiced by the employee’s failure to give notice.
 
 Regardless of whether notice was received, if no payment of compensation (other than medical treatment or burial expense) is made and no application for benefits filed with the commission within two years from the date of the injury or death, the right to compensation therefor’ shall be ba'rred.
 

 Miss.Code Ann. § 71-3-35(1) (emphasis added). Watson responds that this statute of limitations does not apply because payment of compensation was made. Specifically, he claims that Lindsay Logging continued to pay his regular salary in lieu of compensation for the days that Watson was absent from work due to the injury.
 

 ¶ 15. The ALJ made the following finding regarding the two-year statute of limitations:
 

 Mr. Watson clearly had a work-connected medical disability that began on or about March 23, 2001, but the symptoms did not become severe enough for a physician to pronounce him occupationally disabled (temporarily totally disabled from work) until Dr. Lewis took him off work on April 22, 2003. Although Mr. Watson knew that his back pain and associated leg pain and numbness were work-related, he was able to continue his regular work. The employer/earrier provided all medical benefits, and Mr. Watson simply had no claim for workers’ compensation disability benefits until Dr. Lewis took him off work. At that point, the Loggers Self-Insured Fund began paying workers’ compensation disability benefits immediately. He did not need to file a claim then, because the Fund paid the benefits voluntarily, according to the workers’ compensation law. The claim is not barred by the two-year statute of limitations because as soon as the claim for disability benefits arose, the Fund paid temporary total disability benefits voluntarily.
 

 (Footnote omitted). Thus, the ALJ held that Watson’s claim for disability benefits did not arise until Dr. Lewis took Watson off work which did not occur until more than two years after Watson’s injury.
 

 ¶ 16. The Commission, owing no deference to the findings of the ALJ, affirmed the ALJ’s decision on a completely different legal basis. The Commission made the following ruling:
 

 According to M.W.C.C. General Rule 11, any day on which an injured worker is unable because [of] their injury to work and earn them full wage is considered a day of disability under the Act. Furthermore, an injured worker who suffers more than five (5) days of disability is entitled to payment of workers’ compensation benefits. Miss.Code Ann. § [ 371 — 3—11 (Rev.2000). On the fact[s] of his claim, the Claimant suffered eleven (11) days of disability within the first two years after his injury and is, therefore, entitled to payment for six (6) of those days (excluding the five-day waiting period). The only question is whether he in fact received payment for these days of disability within the first two
 
 *393
 
 years so as to erase the statute of limitations found in Miss.[ ] Code Ann[.] § [ ]71-3-25 (Rev.2000).
 

 In a legally and factually indistinguishable case, the Commission held that the payment of regular wages under these circumstances constitutes a payment in lieu of the benefits prescribed by the Act, and is sufficient to erase the two-year statute of limitations, the same as the payment of statutory workers’ compensation benefits themselves.
 
 [Goeghegan v. Union Nat’l Ins. Co.,
 
 MWCC No. 02-13070H-5543-C (Sept. 11, 2006);
 
 see also Brown v. F.W. Woolworth Co.,
 
 348 So.2d 236, 240 (Miss.1977) ].
 

 We conclude that the payment to Mr. Watson of his regular wages during the periods of time that he was absent from work due to medical treatment related to his injury constitutes a payment of benefits within the meaning of § []71-3-35, and thereby erased the statute of limitations.
 

 Thus, the Commission found that the payment of Watson’s salary on the eleven days he missed work to attend his doctor’s appointments related to the injury constituted the payment of salary in lieu of workers’ compensation benefits.
 

 ¶ 17. As stated in the Commission’s order, Watson missed eleven total days of work during the two-year time period following the date of his injury.
 
 [1]
 
 All eleven absences, none of which were consecutive, were due to doctors’ appointments. Watson received his full wages from his employer for each of these days. However, because Watson quit his job with Lindsay Logging two months after his injury, Watson was paid his salary by Lindsay Logging for only four out of the eleven days. The remaining seven days’ wages were paid by his subsequent employers.
 

 ¶ 18. We now examine the authority relied on by the Commission. In
 
 Goeghe-gan,
 
 the Commission held that the claimant was not barred by the two-year statute of limitations because he received his regular salary in lieu of compensation.
 
 Goeghegan,
 
 MWCC No. 02-13070H-5543-C. The claimant had carpal tunnel surgery and missed two to three days of work.
 
 Id.
 
 Following the surgery, he missed a full week of work.
 
 Id.
 
 The next week, he returned to work; however, he merely observed and did not complete any work.
 
 Id.
 
 The third week following the surgery, he worked three days.
 
 Id.
 
 Throughout this time period, the claimant was paid his full wages.
 
 Id.
 
 The carrier issued a payment to the claimant for temporary total disability, and the claimant returned this payment to the carrier because he was receiving his full wages by his employer.
 
 Id.
 

 ¶ 19. The Commission also relied on
 
 Brown,
 
 where the claimant missed eight days of work within two weeks of her injury.
 
 Brown,
 
 348 So.2d at 240. Excluding the five-day waiting period, she was entitled to compensation for three days. Three days of her regular salary totaled $39.69; however, her employer elected to pay her $17.13 for those three days — -the exact amount she would have been paid as compensation by the carrier.
 
 Id.
 
 The supreme court held that this was payment of compensation in lieu of wages and tolled the two-year statute of limitations. The supreme court stated:
 

 Voluntary payment of compensation under these circumstances constitute a waiver of formal claim, and rendered [the] claimant’s delay reasonable. 2 Larson, Workmen’s Compensation Law, ss 78.43(c), 78.70. This is in accord with
 
 *394
 
 the analogous rule that payments of wages toll the limitations statute,
 
 if they were made on account of a recognition of compensation liability.
 

 Id.
 
 (quoting
 
 Martin v. L. & A. Contracting Co.,
 
 249 Miss. 441, 448, 162 So.2d 870, 873 (1964)) (emphasis added).
 

 ¶ 20. We find that Watson’s claim is distinguishable from both
 
 Goeghegan
 
 and
 
 Brown.
 
 The claimant in
 
 Goeghegan
 
 missed multiple weeks of work. During that time period, he even went to work, but he only observed and did not participate in his job duties. It is clear that he was not earning the wages being paid by his employer. Further, the carrier voluntarily issued a compensation payment to the claimant. Similarly, in
 
 Broum,
 
 the employer’s intention to compensate the claimant for her work injury is clear. The employer calculated the exact amount of compensation and paid that amount to the claimant instead of her regular wages.
 

 ¶ 21. There was no such intention on the part of Lindsay Logging to pay compensation to Watson. Lindsay Logging only paid Watson’s medical bills. Watson never missed more than one day at a time for his doctor’s appointments. In deciding whether the waiting period has been met, there is no requirement that the days of disability be consecutive;
 
 [2]
 
 however, each case cited by Watson and the Commission for the proposition that the payment of salary was in lieu of benefits has involved a claimant who missed multiple, consecutive days of work due to an injury.
 

 ¶ 22. In
 
 Brown,
 
 the supreme court stated:
 

 the basic test for determining whether wages are paid in lieu of compensation is whether the wages paid after the injury are actually earned and that such is determined by the facts and circumstances of a particular case; the test for treating wages as in lieu of compensation is not whether the claimant does all his prior work, but, rather, the test is whether the wages are earned by such work as the claimant in fact does.
 

 Brown,
 
 348 So.2d at 240 (citing
 
 Harrell v. Travelers Ins. Co.,
 
 255 So.2d 410, 412 (La.Ct.App.1971)). There is no evidence in the record to show that Watson did not earn his full wages despite his eleven absences. To the contrary, Lindsay testified that Watson was an excellent tree-cutter operator, and that Watson could do enough work in two days to keep a crew running for four or five days.
 

 ¶ 23. Watson relies on the supreme court’s decision in
 
 Parchman v. Amwood Products, Inc.,
 
 988 So.2d 346 (Miss.2008) to support his argument that his salary for those eleven days constituted compensation payments. There, James Parchman was injured on the job and missed three weeks of work in February, five weeks in April and May, and nearly three months during the summer.
 
 Id.
 
 at 348 (¶¶ 4-5). He was paid his full salary during this time.
 
 Id.
 
 at (¶ 6). Amwood filed a motion to dismiss claiming that Parchman’s claim was barred by the two-year statute of limitations because Parchman did not file his petition to controvert within two years of his injury.
 
 Id.
 
 at (¶ 7). The Commission agreed, and the claim was dismissed.
 
 Id.
 
 at 349 (¶ 8).
 

 
 *395
 
 ¶24. However, the supreme court reversed the decision of the Commission and found that Amwood’s payment of Parch-man’s full salary was in lieu of compensation payments; therefore, the two-year statute of limitations was tolled.
 
 Id.
 
 at 351 (¶ 13). Because Parchman missed three weeks, then five weeks, and then nearly three months of work between February and the summer of 2002, there was clear evidence that he did not continue to earn his full wages.
 
 Id.
 
 at 350 (¶ 12).
 

 ¶ 25. Again, Watson’s situation is clearly distinguishable from the supreme court’s decision in
 
 Parchman.
 
 Parchman missed almost five months of work during roughly the first half of 2002. Clearly, Parchman did not earn his wages during that period. However, we do not have such clear evidence that Watson did not earn his wages. Watson missed only eleven days of work spread out over two years and multiple jobs.
 

 ¶ 26. Furthermore, we must consider the effect that multiple employers had on the issue of whether Watson’s salary was paid in lieu of compensation. As the supreme court discussed in
 
 Parchman,
 
 988 So.2d at 349 (¶ 9), there is a presumption that:
 

 Unless there exists an agreement “that the wage is a gratuity in addition to workmen’s compensation,” when a claimant “is paid his usual salary and does no work for a given period or does so little work that he really does not
 
 earn
 
 his wage” the continued payment of the claimant’s salary “will be considered as having been in lieu of compensation.”
 

 (Quoting Dunn, Mississippi Workmen’s Compensation § 45 (3d ed.1982)). The supreme court further stated that:
 

 When an employer elects to continue the payment of the wages of an injured employee and the payment is not in return for work done or services rendered but is either expressly or impliedly in lieu of compensation, the payments may be considered as payments of compensation to the same extent and with like effect as payments otherwise made by an insurance carrier under and in compliance with the Act.
 

 Id.
 
 (quoting Dunn, Mississippi Workmen’s Compensation § 318.1 (3d ed.1982)). However, the supreme court recognized that there is seldom evidence of the employer’s intention behind the payment; thus, such intention must be inferred from the circumstances surrounding the payment.
 
 Id.
 
 (citing
 
 George S. Taylor Constr. Co. v. Harlow,
 
 269 So.2d 337, 338 (Miss. 1972)).
 

 ¶27. Here, there was no agreement that Watson’s wages were made expressly in lieu of compensation. However, we also find no evidence to show that his wages were impliedly in lieu of compensation. We must examine the circumstances surrounding the payment to ascertain the employer’s intent. Here, the problem is that Lindsay Logging only paid his salary for four of the eleven days. Even if we infer that Lindsay Logging’s intent behind these payments was in lieu of compensation, these four days do not satisfy the five-day waiting period required in Mississippi Code Annotated section 71-3-ll(Rev.2000).
 

 ¶ 28. Watson testified that, after he left Lindsay Logging on May 25, 2001, he was unemployed for a few months, and then he took a job with Jerry Vowell Logging for about one year. Watson returned to Lindsay Logging for approximately six months, and then he worked for David Breazeale, Jr. Logging Company for a couple of months. The record does not contain the exact dates of his employment, but at least some portion of the eleven days he missed work because his doctors’ appointments fell during his period of unemployment after he left Lindsay Logging and during
 
 *396
 
 his employment with Jerry Vowell Logging. Watson had appointments on May 31 and June 8, 2001 — presumably during his few months of unemployment after he quit Lindsay Logging on May 25, 2001. Watson had two more appointments on December 6, 2001, and January 7, 2002— presumably during the year he was employed by Jerry Vowell Logging.
 

 ¶ 29. We are unable to infer that wages were paid in lieu of compensation while Watson was unemployed. We are further unable to infer that Jerry Vowell Logging intended for Watson’s wages to constitute payment in lieu of compensation for a work-related injury that occurred while he was employed at Lindsay Logging. In fact, the record contains no evidence that Jerry Vowell Logging was even aware of Watson’s prior injury. As such, we find no evidence, much less substantial evidence, to uphold the Commission’s finding that Watson’s wages were intended to be made in lieu of compensation.
 

 ¶ 30. The Commission did not address the issue of multiple employers in its original order. However, upon Lindsay Logging’s motion to reconsider, the Commission stated:
 

 While we do not adopt a per se rule regarding whether wages paid by another employer can always be considered to be in lieu of compensation, the facts of this case discussed below clearly demonstrate that the requisite intent for wages in lieu of compensation can be imputed to the Carrier in this case, regardless of whether the original Employer or another employer paid all of the wages in lieu of compensation.
 

 The Commission went on to hold that the carrier knew that Watson was missing days of work, even when Watson was working for another employer, because the carrier was paying Watson’s medical bills. The Commission found that Lindsay Logging’s position that the two-year statute of limitations applied surprising because all of Watson’s medical bills had been paid. However, the two-year statute of limitations expressly excepts medical expenses. Miss.Code Ann. § 71-3-35(1). It is possible, under the statute, for an employer to dispute compensability yet provide medical treatment without waiving the statute of limitations. That is exactly what happened here.
 

 ¶ 31. Because we find that Watson’s wages were not paid in lieu of compensation, his claim is barred by the two-year statute of limitations. Accordingly, the judgment of the circuit court affirming the Commission’s decision is reversed and rendered.
 

 ¶ 32. THE JUDGMENT OF THE CIRCUIT COURT OF ATTALA COUNTY IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
 

 KING, C.J., LEE AND MYERS, P.JJ, BARNES, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR. IRVING, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.
 

 [1]
 

 . April 9, 12, and 18, 2001; May 4 and 31, 2001; June 8, 2001, December 6, 2001, January 7, 2002; January 2 and 28, 2003; and March 1, 2003.
 

 [2]
 

 . MWCC General Rule 11 states in pertinent part:
 

 For purposes of determining whether an injured employee has satisfied the waiting-period requirement of section 71-3-11 of the Law, a day of disability is considered to be any day on which the injured employee is unable, because of injury, to earn the same wages as before the injury, and neither the five (5) day period of disability nor the fourteen (14) day period of disability has to consist of consecutive days.